UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN J. CONTOS and REBECCA W. CONTOS, a marital community, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO ESCROW COMPANY, LLC, an Iowa limited liability company,

Defendants.

No. C08-838Z

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss brought by defendant Wells Fargo Escrow Company, LLC, docket no. 7. Having considered all papers filed in support of and in opposition to the Motion to Dismiss, the Court enters the following Order.

**Background**

On September 6, 2006, plaintiffs Steven and Rebecca Contos closed on a purchase of real property located in Seattle. Class Action Complaint ("Complaint"), docket no. 1, ¶ 29. Defendant acted as the escrow agent and charged plaintiffs a "settlement or closing" fee of $652.80. *Id.* ¶¶ 29-31. Defendant also charged plaintiffs two $30.00 wire transfer fees, as listed on the HUD-1 Settlement Statement. *Id.* ¶ 32; *see also* Declaration of Brian Meenaghan in Support of Motion to Dismiss ("Meenaghan Decl."), docket no. 8, exhibit A.

ORDER -1-

1  Plaintiffs signed the HUD-1 Settlement Statement, stating that they "carefully reviewed" the
2  Statement. Meenaghan Decl., exhibit A, p. 3. Plaintiffs also signed a Closing Agreement
3  that stated "if actual charges for [wire] services are less than the amount on the closing
4  statement . . . the difference will not be refunded to the buyer, borrower, and/or seller." *Id.*,
5  exhibit B, p. 2.

6  Prior to the closing date, the plaintiffs' mortgage lender, Wells Fargo Bank, made two
7  deposits on plaintiffs' behalf into an escrow trust account held in the name of Wells Fargo
8  Escrow. Complaint ¶ 33. The escrow trust account was at Wells Fargo Bank, and Wells
9  Fargo Bank did not charge any wire fee to Wells Fargo Escrow for the intra-bank transfers of
10 funds. *Id.*

11 Plaintiffs filed their complaint on May 29, 2008, alleging violations of the Real Estate
12 Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq., and the Washington
13 Consumer Protection Act ("CPA"), RCW 19.86.010 et seq. *Id.* ¶¶ 22-33, 49-62. Plaintiffs
14 also allege that defendant breached its fiduciary and agent duties, that defendant was unjustly
15 enriched, and that defendant breached the HUD-1 Settlement Statement contract. *Id.* ¶¶ 63-
16 81. In addition, plaintiffs allege that any applicable statute of limitations has been tolled by
17 defendant's deceptive practices and that plaintiffs had no knowledge of these practices until
18 shortly before filing the Complaint. *Id.* ¶¶ 34-37. Plaintiffs propose to represent a class of
19 persons who were charged wire fees by defendant. *Id.* ¶¶ 38-39.

20 **Discussion**

21 **A.    Standard for Motion to Dismiss**

22 In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's
23 allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los*
24 *Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts
25 in the complaint sufficiently state a "plausible" ground for relief. *Bell Atlantic Corp. v.*
26 *Twombly*, 127 S. Ct. 1955, 1974 (2007). The Court may properly consider any document

referred to in the complaint if the authenticity of the document is not in question. *Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996).[1]

## B. Plaintiffs' RESPA Claim

Congress enacted RESPA in 1974 to shield home buyers "from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). More specifically, Congress intended to require greater advance disclosure of settlement costs and to prohibit kickbacks, referral fees, and other unearned fees. 12 U.S.C. §§ 2601(b)(1)-(2), 2607(a)-(b). However, Congress did not intend to prohibit payments "for services actually performed." 12 U.S.C. § 2607(c)(2).

Defendant contends that plaintiffs' RESPA claim should be dismissed for three reasons. First, defendant argues that the RESPA claim is time barred. Second, defendant argues that wire transfer services were actually provided and therefore plaintiffs' RESPA claim must be dismissed as alleging an "overcharge." Third, defendant argues that the RESPA claim must be dismissed for failing to allege a split or kick-back of fees with a third-party vendor.

### 1. One-Year Statute of Limitations and Equitable Tolling

Defendant contends that plaintiffs' RESPA claim is time barred by the one-year statute of limitations found in 12 U.S.C. § 2614. Plaintiffs argue that the statute of limitations should be equitably tolled by defendant's deceptive practices, which could not have been reasonably discovered until recently. Defendant argues that plaintiffs must plead "due diligence" with greater specificity and primarily cites *Thomas v. Ocwen Federal Bank FSB*, 2002 WL 99737 (N.D.Ill. 2002), and *Bloom v. Martin*, 865 F.Supp. 1377 (N.D.Cal. 1994), for support. Both cases are distinguishable, however, because plaintiffs in those cases did not allege any affirmative misrepresentations by the defendants. *See Thomas*, 2002 WL

---

[1] Here, the Court may properly consider exhibits A and B to the Meenaghan Declaration as the documents are referred to in the Complaint and their authenticity has not been questioned.

ORDER -3-

99737 at *3-4 ("[plaintiff] alleges no affirmative misrepresentations by the Defendants"), and *Bloom*, 865 F.Supp. at 1387 ("defendants did nothing to conceal the possibility that plaintiffs might at some future point in time incur Demand and/or Reconveyance Fees").  Here, plaintiffs allege that Defendant "concealed from Plaintiffs . . . the truth about their illegal, unfair and deceptive practices," and that plaintiffs "could not have reasonably discovered [such practices] until recently."  Complaint ¶¶ 34-35.

Defendant also disputes that there was any concealment and argues (i) that plaintiffs signed the HUD-1 Settlement Statement certifying that they carefully reviewed the Statement, (ii) that the Statement clearly listed the wire fees, and (iii) that plaintiffs signed a Closing Agreement which stated that "if actual charges for [wire] services are less than the amount on the closing statement . . . the difference will not be refunded to the buyer, borrower, and/or seller."  However, assuming the truth of plaintiffs' allegations and drawing all reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have plead sufficient facts in support of equitable tolling to survive the motion to dismiss.

**2. Overcharges**

An "overcharge" refers to fees that exceed the reasonable value of services or goods provided.  *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 56 (2nd Cir. 2004).  The Ninth Circuit has not addressed whether Section 8(b) of RESPA prohibits overcharges, but a number of other circuits have concluded that it does not.  *See Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 604-05 (N.D.Cal. 2007) (citing cases from the Second, Third, Fourth, Seventh, and Eight Circuits which agree that Section 8(b) does not prohibit overcharges).  This Court agrees with *Kruse* that nothing in the statutory language authorizes courts to divide a charge into "reasonable" and "unreasonable" components.  383 F.3d at 56-57.

Defendant argues that plaintiffs themselves characterize defendant's actions as a "Wire Overcharge Scheme."  *See* Complaint, bold heading between ¶¶ 21-22, and ¶ 28.

Defendant also argues that some services were provided in the form of processing and handling the wire transfers and therefore the facts as alleged amount to an overcharge. Plaintiffs argue that defendant is relying on facts extrinsic to the complaint in claiming that services were actually provided. In addition, plaintiffs argue that the wire transfer fees violate 24 C.F.R. § 3500.14(g)(3) because the wire transfer services were not "actual, necessary and distinct" from the escrow services for which plaintiffs paid over $650.

The Court notes that although plaintiffs use the term "Wire Overcharge Scheme," they also allege that the wire fees constituted "a charge for which no or nominal services are actually performed." Complaint ¶ 51. As such, the Court finds that plaintiffs' allegation that no services were performed in connection with the wire transfer fees states a claim upon which relief can be granted.

### 3. Undivided Unearned Fees

Defendant argues that RESPA does not prohibit unearned fees unless the fees are split with a third party. Section 8(b) of RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). The Department of Housing and Urban Development ("HUD"), the agency charged with administering RESPA, "specifically interprets Section 8(b) as not being limited to situations where at least two persons split or share an unearned fee for the provision to be violated." HUD Statement of Policy 2001-1, 66 Fed.Reg. 53052, 53057 (Oct. 18, 2001).

The Ninth Circuit has not addressed whether HUD's interpretation is correct or entitled to deference, and the circuits that have addressed the issue are split. *Morales v. Countrywide Home Loans, Inc.*, 531 F.Supp.2d 1225, 1227 (C.D.Cal. 2008). Some courts have held that the phrase "No person shall give and no person shall accept any portion, split or percentage of any charge" clearly and unambiguously prohibits only unearned fees that

are split with or kicked back to a third-party vendor. *See id.* (citing cases from the Fourth, Seventh, and Eighth Circuits). Other courts have held that Section 8(b) can or should be read to provide two prohibitions, one against giving and one against receiving portions of a charge. *See id.* (citing cases from the Second, Third, and Eleventh Circuits). This Court finds that the text of the statute is ambiguous and thus gives deference to HUD's interpretation that unearned fees do not need to be split with a third party to violate § 2607(b). Accordingly, plaintiffs' RESPA claim cannot be dismissed for failing to allege a split or kick-back to a third-party vendor.

**C.    Preemption of State Law Claims**

Defendant contends that plaintiffs' state law claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461-70, because the state law claims are based upon "loan-related fees." Plaintiffs argue that HOLA regulates the activities of federally chartered savings and loan associations, and not escrow companies such as defendant.

In determining whether state laws are preempted by federal acts, courts "assum[e] that the historic police powers of the States [are] not to be superseded by the Federal Act unless that [is] the clear and manifest purpose of Congress." *Conference of Fed. Sav. and Loan Ass'ns v. Stein*, 604 F.2d 1256, 1260 (9th Cir. 1979) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In HOLA, Congress gave authority to the Office of Thrift Supervision ("OTS") (previously the Federal Home Loan Bank Board) to regulate "Federal savings associations (including Federal savings banks)." 12 U.S.C. § 1464(a). The regulations promulgated by OTS make clear that *"federally chartered savings associations are subject to the majority of generally applicable state laws, except when those laws purport to affect their lending operations*, in which case the state laws are superseded." *McCurry v. Chevy Chase Bank, F.S.B.*, 2008 WL 2231460 at *3 (emphasis added); *see also Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178, 185 (2nd Cir. 2005) ("HOLA regulates a specific breed of financial institutions").

Defendant argues that it is an "affiliate," under 12 U.S.C. § 1462(9), of Wells Fargo Bank, and therefore HOLA regulations apply to its activities as well. Defendant also points out that OTS regulations preempt state regulation of "loan-related fees" and "escrow accounts." 12 C.F.R. § 560.2(b)(5)-(6). But these terms cannot be read in isolation, and defendant fails to show how plaintiffs' state law claims in any way regulate or affect the lending operations of federally chartered savings associations. Moreover, nothing in plaintiffs' Complaint supports defendant's assertion that the state law claims directly affect the lending operations of a federal savings association; such an argument, if it can succeed at all, requires greater factual development. Accordingly, plaintiffs' state law claims are not dismissed based on federal preemption.

**D.     Washington Consumer Protection Act**

Defendant argues that Plaintiffs' allegations do not establish violations of RCW 18.44.450 or Washington Administrative Code 208-680E-011. Plaintiffs argue that the wire fee scheme violates RCW 18.44.301 and that a statutory violation is not the only way to establish the necessary elements of a CPA claim.

In order to prevail on a private CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). Paragraphs 55 through 62 of the Complaint allege all five elements of a CPA claim. Defendant's argument that no state statute has been violated does not show that plaintiffs' CPA claim is defective. Thus, the Court holds that plaintiffs have properly alleged a CPA claim.

**E.     Dismissal of the Putative Class Action and State Law Claims**

Because plaintiffs' RESPA claim is not dismissed the Court need not address defendant's argument that the claims of the putative class must be dismissed.

ORDER   -7-

IT IS SO ORDERED.

DATED this 1st day of October, 2008.

                                             /s/ Thomas S. Zilly
                                             Thomas S. Zilly
                                             United States District Judge

ORDER -8-