| | |
|---|---|
| STEVEN J. CONTOS and REBECCA W. CONTOS, a marital community, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO ESCROW COMPANY, LLC, an Iowa limited liability company,<br><br>Defendant. | No. C08-838Z<br><br>ORDER |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

This matter comes before the Court on Defendant Wells Fargo Escrow Company, LLC's Motion for Summary Judgment, docket no. 25. Having considered the briefs and declarations in support of and in opposition to the motion,[1] the Court hereby GRANTS Defendant's Motion for Summary Judgment.

---

[1] Defendant's motion is more accurately stated as one for *partial* summary judgment in light of Plaintiffs' filing of the First Amended Complaint, docket no. 47, which added new claims after Defendant filed its motion for summary judgment. In deciding Defendant's motion, the Court has also considered the briefs filed in connection with Plaintiffs' Motion for Leave to Amend Complaint, docket nos. 39, 42, and 44, in which the parties discussed the impact of the amendments on Defendant's motion. Notwithstanding Plaintiffs' amendments to the complaint after the filing of Defendant's motion, Plaintiffs assert Defendant's motion remains ripe for the Court's review. Pls.' Reply Mot. Amend, docket no. 44, at 2:8-10.

ORDER -1-

**I.     BACKGROUND**

   **A.     Parties and Present Lawsuit**

On or about January 10, 2006, Plaintiffs Steven and Rebecca Contos entered into a Condominium Purchase and Sale Agreement ("Purchase and Sale Agreement") as buyers of a condominium in Seattle. Plachy Decl., docket no. 27, ¶ 6, Ex. B. The Purchase and Sale Agreement lists Wells Fargo Escrow Company ("WFE") as the escrow and closing agent. Id. ¶ 6, Ex. B at WFE 00261 ¶ 12. Plaintiffs bring a putative class action against WFE on behalf of themselves and two classes: (1) a "Wire Fee Class," whose members were charged wire fees by WFE even though WFE offset those wire fees by earnings credits, and (2) a "Builder Referral Class," whose members were purchasers who were charged escrow or closing fees that were more than the fees charged to the seller. First Am. Compl. ("FAC"), docket no. 47, ¶¶ 45, 46.

   **B.     Wells Fargo Escrow Company Acts As Escrow Agent**

WFE acts as a third party or intermediary for buyers and sellers of real property who have reached an agreement to purchase and sell real property. Plachy Decl. ¶ 4. As a closing agent and provider of escrow services, WFE holds a buyer's funds in trust until closing of the purchase and sale, and upon closing releases the funds to the seller. Id. As a part of providing escrow and closing agent services, WFE is charged for and pays for many services, including wire transfer fees, courier and delivery fees, electronic document delivery fees, account maintenance fees, notary service fees, and report fees. Id. Some, but not all, of the service fees charged to and paid by WFE are passed on to and paid by WFE's customers. Id. Those charges are disclosed in the HUD-1 Settlement Statement and/or in the escrow instructions signed by and provided to WFE's customers. Id. WFE informs its customers of the possibility that actual charges to WFE will be less than the amounts identified in the HUD-1 Settlement Statement, as documented in a supplement to escrow instructions. Id. ¶ 5.

### C. Closing Documents in Plaintiffs' Transaction

Plaintiffs signed the closing documents related to their purchase and sale transaction on August 25, 2006. Plachy Decl. ¶ 10. The Closing Agreement and Escrow Instructions signed by Plaintiffs outlines the standard escrow services that WFE agreed to perform, including the preparation of documents, the disbursement of funds, the preparation of the settlement statement, the obtaining of a preliminary commitment for title insurance, the verification of existing encumbrances, the handling of instructions from and disclosures to third parties, and the recommendation of legal counsel, where appropriate. Id. ¶ 5, Ex. A at WFE 00171-00172. Specifically, regarding the "Deposits and Disbursement of Funds," the Closing Agreement and Escrow Instructions document provides as follows:

> Before the closing date, each party shall deposit with the closing agent all funds required to be paid by such party to close the transaction, less any earnest money previously deposited with the real estate agent. . . . All funds received by the closing agent shall be deposited in a trust account with any bank doing business in the State of Washington and may be transferred to any other such accounts. The closing agent shall not be required to disburse any funds deposited by check or draft until it has been advised by its bank that such check or draft has been honored. All disbursements shall be made by the closing agent's check.

Id., Ex. A at WFE 00171.

Regarding the "Closing Agent's Fees and Expenses," the Closing Agreement and Escrow Instructions document provides as follows:

> The closing agent's fee is intended as compensation for the services set forth in these instructions. ***If additional services are required*** to comply with any change or addition to the parties' agreement or these instructions, or as a result of any party's assignment of interest or delay in performance, ***the parties agree to pay a reasonable additional fee*** for such services. The parties shall also reimburse the closing agent for any out-of-pocket costs and expenses incurred by it under these instructions. The closing agent's fees, costs and expenses shall be due and payable upon the closing date or other termination of the closing agent's duties and responsibilities under these instructions, and shall be paid one-half by the buyer and one-half by the seller unless otherwise provided in the parties' agreement.

Id., Ex. A at WFE 00172 (emphasis added).

ORDER -3-

The Affiliated Business Arrangement Disclosure, which Plaintiffs signed on August 25, 2006, discloses the affiliate relationship between WFE and Wells Fargo Bank. Id. ¶ 8, Ex. E. This document estimates WFE's closing service fee to be $300-400, with a footnote that in some states it may be as much as 1% of the loan amount. Id., Ex. E at WFE 00422.

The Supplement to Agreement and Escrow Instructions document, which Plaintiffs signed on August 25, 2006, provides:

> BY SIGNING THIS DOCUMENT, EACH PARTY ACKNOWLEDGES:
>
> * * *
>
> Settlement Statement Approved. The settlement statement prepared by the closing agent is approved by me, made a part of these instructions by this reference, and ***I agree to pay my costs, expenses and other obligations itemized on that statement***. . . .

Suppl. Plachy Decl., Ex. A at WFE 00181 (emphasis added). The Supplement to Agreement and Escrow Instructions document further provides for wire fees, as follows:

> Buyer, borrower, and/or seller are aware that a courier fee, electronic document delivery fee and/or ***wire transfer fee*** may have been collected for delivery of loan payoff, seller proceeds and other transfer of documents or funds as applicable. Parties are aware that ***if actual charges for these services are less than the amount on the closing statement, that the difference will not be refunded to the buyer***, borrower and/or seller.

Id., Ex. A at WFE 00182 (emphasis added).

### D. Settlement or Closing Escrow Fees

WFE charged Plaintiffs a settlement or closing escrow fee (the "escrow fee") in the amount of $652.80 for the first loan and $136.00 for the second loan, for a total amount of $788.80. Brown Decl., docket no. 32, ¶ 2, Ex. 1 at WFE 00298. The HUD-1 Settlement Statement bearing Plaintiffs' signatures (WFE 00297-299) lists the amounts paid from the borrowers' (i.e., Plaintiffs') funds. Id. ¶ 2; Contos Decl., docket no. 31, ¶ 3.

///

///

### E. <u>Wire Transfer Fees</u>

Buyers and sellers of real property, as well as their agents and lenders, often opt to transfer money to WFE by wire transfer. Plachy Decl. ¶ 11. Most *lenders* – i.e., "approaching a hundred percent" – use wires rather than cashiers checks or any other form to transfer funds. Brown Decl., Ex. 3 (Plachy Dep.) at 109:25-110:17. However, there is no evidence in the record of the percentage of persons, other than lenders, using wire transfers to deposit funds in escrow accounts. Each incoming wire transfer gives WFE notification of the transfer and results in useable funds upon completion of the transfer. Plachy Decl. ¶ 15.

Here, the parties opted to transfer money to WFE by wire transfer. The purchase price of Plaintiffs' condominium was $232,500.00. <u>Id.</u> ¶ 6, Ex. B at WFE 000249. Plaintiffs financed the purchase of the condominium through two mortgages from Wells Fargo Bank, the first loan in the amount of $186,000.00, and the second loan in the amount of $23,250.00. <u>Id.</u> ¶ 7, Ex. D ("Loan Closing Instructions"). On September 6, 2006, Wells Fargo Home Mortgage and Wells Fargo Bank wired $183,219.20 and $23,250.00, respectively, to WFE's trust account at Wells Fargo Bank. <u>Id.</u> ¶ 14, Exs. J and K. These wire transfers are documented as "internal" wire transfers because they are internal to Wells Fargo Bank and do not go through the Federal Reserve Bank. <u>Id.</u> ¶ 15. WFE also processed two incoming wire transfers from Plaintiffs' account at Washington Mutual Bank to WFE's trust account at Wells Fargo Bank, the first in the amount of $22,542.65, and the second in the amount of $1,939.89. <u>Id.</u> ¶ 14, Exs. I, L, respectively.[2] In total, WFE processed four[3] incoming wire

---

[2] Plaintiffs originally alleged that the internal bank wire transfers, such as from one Wells Fargo account to another, were not wire transfers; they have since conceded that it is not material whether the wire transfers occurred within a single bank or between banks. Pl.'s Resp. Mot. Summ. J. at 1:7-8 ("The . . . type of bank transfers involved in the Contos's escrow transaction is not material."); <u>Id.</u> at 1:15-18; Pl.'s Reply Mot. Amend at 13:2-3 ("The question of whether Plaintiffs' transaction involved wires or intra-bank transfers is therefore not material.").

[3] Although Plaintiffs dispute the number of wire transfers that occurred, they concede that "[t]he number of . . . bank transfers involved in the Contos' escrow transaction is not material." Pl.'s Resp. Mot. Summ. J. at 1:7-8.

transfers in connection with the closing of Plaintiffs' condominium purchase transaction.  Id. ¶ 14; see also Jones Decl., docket no. 38, ¶ 4.

Wire transfers involve numerous steps, approvals, confirmations, significant staff time, fees for both incoming and outgoing wires, and office equipment.  Plachy Decl. ¶ 11; Jones Decl. ¶ 2.  For example, when WFE is notified that an incoming wire transfer has been received, a WFE employee (either escrow officer or assistant) must log into the Wells Fargo Bank Commercial Electronic Office system, view the wire transfer, print a wire report, match the figure in WFE's Streamline escrow software, produce a receipt for the wire, and attach the report and receipt to comply with Washington Department of Financial Institutions procedures.  Plachy Decl. ¶¶ 11-12; Suppl. Meenaghan Decl., docket no. 36, Ex. A (Plachy Dep.) at 75:23-77:16.  Plaintiffs do not dispute that WFE undertakes these tasks to process a wire transfer.

Wells Fargo Bank charges WFE $9 per incoming wire transfer, and charges WFE a $1 fee for each wire transfer report.  Plachy Decl. ¶ 13; Jones Decl. ¶ 3.  Each incoming wire transfer requires ordering and paying for two wire transfer reports because each wire transfer must be viewed at the time it is executed, and at the time of closing.  Plachy Decl. ¶ 13.  Thus, Wells Fargo Bank charges WFE $11 for each incoming wire transfer.  Id.

WFE, in turn, charges its customers wire transfer fees if they (or their lenders) have opted to deposit funds using wire transfers.  In contrast, WFE does not charge any wire transfer fees if there are no wire transfers.  See, e.g., Suppl Plachy Decl. ¶ 4, Ex. A (example of HUD-1 Settlement Statement in an unrelated escrow closing where no wire transfers were performed and thus no wire transfer fees were charged).  In the present case, WFE charged Plaintiffs two wire transfer fees in the amounts of $30.00 and $29.93.  Plachy Decl. ¶ 17, Ex. M (final HUD-1 Settlement Statement, Lines 813 and 1111).  These charges were documented in the estimated HUD-1 Settlement Statement, which Plaintiffs signed on August 25, 2006.  Id. ¶ 17, Ex. N (Lines 811 and 1111).

ORDER  -6-

The Consumer's Guide to Title Insurance and Escrow Services of the Washington Department of Financial Institutions recognizes that wire transfer fees are typically separate from the Settlement/Closing Fee. Suppl. Plachy Decl. ¶ 5, Ex. B (Praecipe at docket no. 46) at 12 (showing "wire transfer fees" as an example of an "other incidental fee" sometimes charged by escrow agents in addition to, but separate from, escrow fees).

### F. Earnings Credits

Wells Fargo Bank provides earned fee credits ("earnings credits" or "earnings allowance") to holders of Interest on Lawyers Trust Accounts ("IOLTA"), like WFE. Plachy Decl. ¶ 18. Although IOLTA accounts cannot pay interest to the accountholders,[4] banks offer earnings credits "as an incentive to maintain accounts." Id.; see also Brown Decl., Ex. 3 (Plachy Dep.) at 105:9-106:3 (testifying that banks offer earnings credits as a way to increase deposits). WFE has nine IOLTA accounts at Wells Fargo Bank. Plachy Decl. ¶ 18, Ex. P. The earnings credit rate is determined by the Wells Fargo Central Finance Area and is adjusted every month. Id. ¶ 19; Brown Decl., Ex. 2 (Milner Dep.) at 33:9-13. The earnings credit rate for any given month is multiplied by the investable balance held in accounts to yield the earnings allowance earned by accounts during the month. Plachy Decl. ¶ 19; Brown Decl., Ex. 2 (Milner Dep.) at 49:4-9. The account charges in any given month – which include account maintenance, certain check deposit charges, stop payment fees, Account Reconciliation Plan charges, wire transfer charges, and wire transfer reports – are subtracted from the earnings allowance for that month and, if the result is negative, then WFE pays the deficit amount to Wells Fargo Bank. Plachy Decl. ¶ 19; Ex. O at WFE 02099 ("Trend Analysis" showing deficits in every month from April through September 2008).

In September 2006, the month that Plaintiffs' purchase and sale transaction took place, the investable balance on WFE accounts was $10,728,698.27. Id. ¶ 20. The earnings

---

[4] The interest on these accounts is paid to the Legal Foundation of Washington. Plachy Decl. ¶ 18.

fee rate was 4.63%, which yielded $40,827.80 in earnings credits. Id. Because the charges for WFE accounts were $12,542.12, WFE's position was positive $28,285.68, and the outstanding balance to be paid was zero. Id. ¶ 20, Ex. P at WFE 1553 ("Trend Analysis" showing positive balances in every month from April through September 2006). In short, WFE paid no money to Wells Fargo Bank for the September 2006 charges applicable to its nine accounts at Wells Fargo Bank, including the account into which the funds held on behalf of Plaintiffs were deposited (account no. ending in 698), because the earnings credits exceeded the account charges. Brown Decl., Ex. 3 (Plachy Dep.) at 87:10-15, 97:21-98:2; Plachy Decl., Ex. P.

When earnings credits exceed account charges in a given month, the positive balance is not redeemable in cash and may not be carried over to subsequent months. Plachy Decl. ¶ 20; Brown Decl., Ex. 2 (Milner Dep.) at 35:5-15, 38:1-7. No dollars change hands between Wells Fargo Bank and WFE; earnings credits simply offset WFE's fees in a particular month. Brown Decl., Ex. 2 (Milner Dep.) at 38:8-13, 50:17-51:1. Plaintiffs do not dispute these facts. Pls.' Resp. Mot. Summ. J., docket no. 30, at 6:5-11.

WFE does not disclose to its customers through any of the closing documents that it potentially may receive earnings credits from Wells Fargo Bank to offset account charges in any given month.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court grants summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been

presented, the adverse party "may not rely merely on allegations or denials in its own pleading." FED. R. CIV. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson, 477 U.S. at 256.

### B. RESPA Section 8(b) Claim Alleged on Behalf of Plaintiffs and the Wire Fee Class (First Count)

The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), prohibits kickbacks and unearned fees as follows:

> No person shall give and ***no person shall accept*** any portion, split, or percentage of ***any charge*** made or ***received for the rendering of a real estate settlement service*** in connection with a transaction involving a federally related mortgage loan ***other than for services actually performed***.

12 U.S.C. § 2607(b) ("Section 8(b)") (emphasis added). HUD Regulation X, 24 C.F.R. § 3500.14(c), states: "A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section." 24 C.F.R. § 3500.14(c).

Plaintiffs allege on behalf of themselves and the Wire Fee Class that WFE violated Section 8(b) and Regulation X by charging Plaintiffs a "duplicative" charge for "no additional services" above the core services covered by the escrow fee:

> By charging wire fees that are not in fact incurred, Defendant engaged and continues to engage in the practice of rendering a duplicative charge for which no additional services are actually performed or provided in violation of 12 U.S.C. § 2607(b) and Regulation X, 24 C.F.R. § 3500.14.

FAC ¶ 59.

WFE moves for summary judgment on Plaintiffs' Section 8(b) claim based on the undisputed fact that WFE performed services in connection with the four incoming wire transfers. Plachy Decl. ¶¶ 11-12; Jones Decl. ¶ 2; Suppl. Meenaghan Decl., Ex. A (Plachy Dep.) at 75:23-77:18; see Kingsberry v. Chicago Title Ins. Co., 586 F. Supp. 2d 1242, 1247

ORDER -9-

(W.D. Wash. 2008) ("So long as some work is performed by the recipient of the fee, or any portion thereof, RESPA Section 8(b) does not impose liability."). Plaintiffs do not dispute that WFE performed wire transfer services.

Instead, Plaintiffs argue that the wire transfer services performed by WFE were part of the "core" services covered by the escrow fee, and thus WFE collected an additional wire transfer fee without performing additional services. Pls.' Resp. Mot. Summ. J. at 9:5-7 ("Because the services Wells Fargo Escrow performed to collect and disburse funds is actually in exchange for its general escrow fee, *the fact that it performed these services* provides no defense to its RESPA violations no matter how minutely its tasks are described.") (emphasis added).[5] In support of their "core services" argument, Plaintiffs rely on the deposition of Kevin Plachy, WFE's Regional Escrow Manager, Assistant Vice President. Mr. Plachy testified that Plaintiffs' escrow fee of $652.80 covers "the core functions [WFE] provide[s] in escrow," including "clearing title, preparing lender and transfer documents, signing clients on their paperwork, and disbursing their funds according to their instructions." Brown Decl., Ex. 3 (Plachy Dep.) at 23:11-18. Although Mr. Plachy outlined the "variety of ways" WFE collects funds, such as via personal check, cashier's check, cash, and wire transfers, he never testified that collecting funds or processing wire transfers were "core" functions. Brown Decl., Ex. 3 (Plachy Dep.) at 24:20-25:17; see also Suppl. Plachy Decl. ¶ 3 ("[W]ire transfer fees **do not** fall within the basic core functions of the escrow services.") (emphasis in original).[6] Mr. Plachy explained that WFE charges fees

---

[5] Plaintiffs' theory has changed over time. Plaintiffs' original complaint alleged that the wire fees constituted "a charge for which no or nominal services are actually performed," and the Court upheld Plaintiffs' RESPA claim in part based on this allegation. Compl., docket no. 1, ¶ 51; Order Denying Defendant's Motion to Dismiss, docket no. 14, at 5:7-11. Plaintiffs' First Amended Complaint now alleges that "no additional services are actually performed." FAC ¶ 59.

[6] This statement in Mr. Plachy's supplemental declaration does not contradict his deposition testimony and therefore is not stricken. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior testimony.").

ORDER -10-

in addition to the "regular escrow fee" for "services that are not always predictable" as compared to "core services, such as clearing title, such as signing the clients" that WFE "know[s] we do . . . every time." Brown Decl., Ex. 3 (Plachy Dep.) at 56:5-57:24. There is no evidence supporting Plaintiffs' argument that the wire transfer services are core services covered by the escrow fee.

Plaintiffs also cannot argue that because wire transfers are used in every transaction they *should be* considered core services – because there is no evidence that wire transfers are used in every transaction. Although Mr. Plachy testified that "approaching a hundred percent" of lenders use wire transfers, that testimony was limited to lenders. Brown Decl., Ex. 3 (Plachy Dep.) at 109:25-110:17. Moreover, Mr. Plachy testified that WFE collects funds not only by wire transfers but also by personal check, cashiers check, or cash; such testimony demonstrates that wire transfer services are not "predictable" core services performed "every time." See id., Ex. 3 (Plachy Dep.) at 25:10-17, 56:5-57:24. WFE has submitted a HUD-1 Settlement Statement in an unrelated transaction in which no wire transfers occurred, and no wire transfer fees were thus charged. Suppl. Plachy Decl., Ex. A.

Plaintiffs signed three documents that put them on notice that wire transfer fees were not part of the escrow fee. First, the Closing Agreement and Escrow Instructions defines the "Closing Agent's Fees and Expenses" as "compensation for the services set forth in these instructions," and wire transfer services are not mentioned, referred to, or set forth in the escrow instructions. Plachy Decl., Ex. A at WFE 00171-172. Second, the Supplement to Agreement and Escrow Instructions provides that a "wire transfer fee may have been collected," and Plaintiffs are informed that "if actual charges for these services are less than the amount on the closing statement, that the difference will not be refunded to the buyer." Plachy Decl., Ex. A at WFE 00182. Third, the HUD-1 Settlement Statement identifies wire transfer fees as fees for services separate from the escrow fee. Id., Ex. M at WFE 00288 (Lines 813 and 1111). The HUD-1 Settlement Statement's itemization of charges comports

with RESPA. See 12 U.S.C. § 2603 ("form for the statement of settlement costs . . . shall conspicuously and clearly itemize all charges"). Plaintiffs agreed to pay the obligations in the HUD-1 Settlement Statement in the Supplement to Agreement and Escrow Instructions. Id., Ex. A at WFE 00181. There is no doubt that WFE provided adequate notice to Plaintiffs that any wire transfer fees would be separate from the escrow fee.

WFE charged Plaintiffs wire transfer fees for services actually performed that were not "core services" covered by the general escrow fee. Plaintiffs' RESPA Section 8(b) claim, FAC ¶ 59, fails as a matter of law.

### C. RESPA Section 8(a) Claim Alleged on Behalf of Plaintiffs and the Wire Fee Class (First Count)[7]

RESPA, 12 U.S.C. § 2607(a), prohibits kickbacks and unearned fees as follows:

> No person shall give and ***no person shall accept any*** fee, kickback, or ***thing of value pursuant to any agreement or understanding***, oral or otherwise, ***that business incident to*** or a part of ***a real estate settlement service*** involving a federally related mortgage loan ***shall be referred*** to any person.

12 U.S.C. § 2607(a) ("Section 8(a)") (emphasis added). Plaintiffs allege on behalf of themselves and the Wire Fee Class that WFE violated Section 8(a) by accepting earnings credits from Wells Fargo Bank in exchange for referring business to Wells Fargo Bank:

> Defendant received things of value from Wells Fargo Bank in the form of earnings credits in exchange for depositing its clients' funds in Wells Fargo Bank escrow accounts. By receiving earnings credits from Wells Fargo Bank in exchange for referring the Plaintiffs and members of the Wire Fee Class to Wells Fargo Bank for trust account services, Wells Fargo Escrow violated 12 U.S.C. § 2607(a) and Regulation X, 24 C.F.R. § 3500.14.

///

///

---

[7] After the parties filed their summary judgment briefs, Plaintiffs amended their complaint to change the theory under which Plaintiffs assert WFE's use of earnings credits violates RESPA, from RESPA Section 8(b) and Section 8(c) to Section 8(a). As noted in Footnote 1, notwithstanding Plaintiffs' amendments to the complaint, Plaintiffs assert Defendant's motion remains ripe for the Court's review. Pls.' Reply Mot. Amend at 2:8-10.

ORDER -12-

FAC ¶ 60. In essence, Plaintiffs challenge WFE's receipt of earnings credits as a result of its escrow deposits at Wells Fargo Bank. Meenaghan Decl., docket no. 26, Ex. C (Pls.' Resp. Interrog.) at 7:15-22, 10:21-11:2.

WFE moves for summary judgment on Plaintiffs' Section 8(a) claim, FAC ¶ 60,[8] by arguing that Plaintiffs lack standing to sue. A plaintiff has standing when (1) he has "suffered an injury in fact," (2) that is causally connected to the "conduct complained of," and (3) that injury can "likely . . . be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." Id. at 560. WFE argues that Plaintiffs have no standing to claim any interest in earnings credits earned by WFE after the date of closing. As noted above, earnings credits are not calculated until the end of the monthly statement cycle. Plaintiffs respond that WFE "misconstrues Plaintiffs' claims. . . . Plaintiffs do not seek the cash equivalent of all earnings credits; they seek a refund of duplicative fees." Pls.' Resp. Mot. Summ. J. at 23:9-10; see also id. at 8:3-4. Plaintiffs also seek statutory damages of three times the fees under RESPA. In its reply, WFE argues that the availability of statutory damages cannot relieve Plaintiffs of having to prove a cognizable harm or injury.

Contrary to Plaintiffs' assertion in their response brief that they "do not seek the cash equivalent of all earnings credits," Plaintiffs' prayer for relief seeks "restitution of all improperly collected . . . interest." FAC at 22, ¶ D. In addition, Plaintiffs' responses to interrogatories similarly claim damages including "all benefits received by the defendant associated with the deposit of plaintiffs' funds in accounts in the name of the defendant." Meenaghan Decl., Ex. C (Pls.' Resp. Interrog.) at 13:1-3. WFE argues that earnings credits are not interest because they are not paid in cash; they are not transferable or otherwise

---

[8] The Section 8(a) claim alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶ 60, should not be confused with the Section 8(a) claim alleged on behalf of Plaintiffs and the Builder Referral Class, FAC ¶¶ 63-67, the latter of which is not presently at issue.

ORDER -13-

redeemable by anyone other than WFE; and they are applied only to amounts charged by Wells Fargo Bank for maintenance of WFE's escrow accounts for the month in which they are earned. Clearly, earnings credits are not interest. What is important here is that Plaintiffs are seeking money damages for injury resulting from WFE's receipt of earnings credits, and the issue is whether they have standing to make such a claim.

Three recent Western District of Washington cases hold that an escrow customer lacks standing to challenge an escrow company's receipt of earnings credits because the customer is unable to allege injury in fact. Sypolt v. The Talon Group, Case No. C07-cv-1892-MJP, Order, docket no. 63, 4-6 (W.D. Wash. Feb. 26, 2009); Cornelius v. Fidelity Nat'l Title Co., Case No. C08-cv-754-MJP, Order, docket no. 56, at 8-9 (W.D. Wash. Mar. 9, 2009); Jankanish v. First Am. Title Ins. Co., Case No. 08-cv-1147-MJP, Order, docket no. 91, at 8-10 (W.D. Wash. Mar. 23, 2009). In Cornelius, as in the present case, Plaintiffs were suing under RESPA Section 8(a) on an earnings credit theory to recover fees offset by earnings credits. Cornelius, Am. Compl., docket no. 2, ¶¶ 153, 154 (Count IV). The Court adopts the well-reasoned opinions of Sypolt, Cornelius, and Jankanish and concludes that in the present case, Plaintiffs lack standing to bring their RESPA Section 8(a) claim on an earnings credit theory, FAC ¶ 60, because they cannot show injury in fact.[9]

### D. State Law Claims Alleged On Behalf of Plaintiffs and the Wire Fee Class

WFE moves for summary judgment on the following state law claims brought on behalf of Plaintiffs and the Wire Fee Class: (1) Washington Consumer Protection Act ("CPA"), FAC ¶¶ 68-75, (2) breach of fiduciary duty, FAC ¶¶ 76-79, (3) breach of duties as an agent, FAC ¶¶ 80-83, (4) unjust enrichment, FAC ¶¶ 84-88, and (5) breach of contract FAC ¶¶ 89-94. For all of these claims, WFE moves for summary judgment by arguing that

---

[9] Even if Plaintiffs were able to establish standing, Plaintiffs would lose on the merits of their RESPA Section 8(a) claim because WFE did not refer "business incident to or part of a real estate settlement service" to Wells Fargo Bank by depositing Plaintiffs' funds with Wells Fargo Bank. See Cornelius, Order at 9; Jankanish, Order at 9.

ORDER -14-

"[b]ecause Plaintiffs were not overcharged [for the wire transfer charges], WFE did nothing wrong, [and] Plaintiffs sustained no damages." Def.'s Mot. Summ. J. at 22:16-23:10 (citing case law requiring damages as an essential element of each claim). WFE's "no damages" argument and any additional arguments put forth by WFE with respect to each claim are addressed below.

### 1. Washington Consumer Protection Act Claim (Third Count)

Plaintiffs allege a Washington CPA claim under RCW 19.86.020, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW 19.86.020; FAC ¶¶ 68-75. "[T]he question of whether particular actions gave rise to a violation of the Consumer Protection Act is reviewable as a question of law." Svendsen v. Stock, 143 Wn.2d 546, 553 (2001). The "five distinct elements" of a CPA claim are: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). WFE moves for summary judgment on the first and fourth elements of Plaintiffs' Washington CPA claim.[10]

#### a. Unfair or Deceptive Act or Practice

In the First Amended Complaint, Plaintiffs do not specifically allege any particular deceptive acts or practices; instead they refer to "Defendant's conduct, as detailed above." FAC ¶ 71. Presumably, Plaintiffs are referring to the "Wire Overcharge Scheme," see FAC ¶¶ 22-27, in which Plaintiffs allege that "[b]y placing wire fees on the settlement statement, Wells Fargo Escrow represented that such expenses were in fact incurred by Wells Fargo Escrow." FAC ¶ 24. WFE moves for summary judgment on the first element, by arguing that there was no deceptive act because WFE disclosed the two wire fees in advance of

---

[10] The Court does not consider WFE's public interest argument because WFE raised it for the first time in its reply brief. Def.'s Reply Mot. Summ. J., docket no. 35, at 9.

ORDER -15-

Plaintiffs' payment. Plaintiffs' First Amended Complaint concedes that WFE disclosed the wire transfer fees. FAC ¶ 34. Plaintiffs respond that they can establish an unfair or deceptive act by showing that WFE violated the Washington Escrow Registration Act, RCW § 18.44.301. This Act prohibits "employ[ing] any scheme . . . to defraud," "engag[ing] in any unfair or deceptive practice," "obtain[ing] property by fraud," and "knowingly mak[ing] . . . any false, deceptive, or misleading information in the conduct of the business of escrow . . . ." RCW § 18.44.301 (1)-(4). Plaintiffs argue that WFE "engaged in a scheme to pass off 'wire transfer fees' as legitimate third-party fees in transactions where they were not charged any such fees." Pls.' Resp. Mot. Summ. J. at 16:16-17. Plaintiffs also argue that WFE violated WAC § 208-680E-011, which prohibits an escrow agent from "utiliz[ing] such [escrow] funds for the benefit of the agent." Id. at 17:1-9.

WFE does not reply directly to Plaintiffs' arguments, but instead argues that Washington law and RESPA both allow the itemization of fees; that it was reasonable for WFE to itemize the wire transfer fees; that WFE itemized the fees in good faith; that Plaintiffs do not allege that they relied on anything WFE did or said; that the fees were disclosed up front; and that there is no dispute that WFE performed wire services. Def.'s Reply Mot. Summ. J. at 8. The parties are like ships passing in the night. The thrust of Plaintiffs' argument is that WFE charged fees it did not incur, and the thrust of WFE's response is that WFE disclosed fees in accordance with the law.

The Court concludes that there is no unfair or deceptive act or practice based on the following undisputed facts: (a) Plaintiffs and their lenders opt to use wire transfers in connection with their purchase and sale transaction; (b) WFE performs services associated with the wire transfers; (c) the services benefit Plaintiffs; (d) WFE discloses that it will be charging wire transfer fees to Plaintiffs in the settlement statement; (e) Plaintiffs agree to pay all fees set forth in the settlement statement; (f) WFE charges Plaintiffs wire transfer fees; (g) Plaintiffs pay such fees; (h) Wells Fargo Bank charges WFE wire transfer fees; and

(i) WFE pays Wells Fargo Bank such fees unless, at month's end, it has sufficient earnings credits to offset the fees. The fact that WFE uses earnings credits to offset the fees at month's end, and does not actually incur any fees when its balance of earnings credits to charges is net positive, does not negate the fact that Wells Fargo Bank charges WFE fees. The legality of WFE's practice of charging wire transfer fees at the time of closing does not depend on the ultimate form of payment at month's end between Wells Fargo Bank and WFE. In the absence of any unfair or deceptive act or practice, Plaintiffs' Washington CPA claim under RCW 19.86.020, as alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶¶ 68-75, fails as a matter of law.

### b. **Injury to Plaintiff in His or Her Business or Property**

Plaintiffs assert that they were injured in the amount of $60 in wire transfer fees as a result of WFE's receipt of earnings credits to offset the bank charges. Where there is no unfair or deceptive act or practice, there can be no injury resulting from such an act. The injury issue is moot.

### 2. **Breach of Fiduciary Duty (Fourth Count) and Breach of Duties as an Agent (Fifth Count)**

WFE moves for summary judgment on Plaintiffs' breach of fiduciary duty claim and breach of duties as an agent claim by arguing that Plaintiffs have sustained no damages. See Gillespie v. Seattle-First Nat'l Bank, 70 Wn. App. 150, 170 (1993); Mueller v. Staples & Son Fruit Co., 26 Wn. App. 166, 177 (1980). Plaintiffs respond that (1) WFE breached its fiduciary duty by failing to disclose its receipt of earnings credits; and (2) Plaintiffs are not required to prove injury because these are equitable claims. Plaintiffs assert that the duties of an agent parallel the duties of a fiduciary, and they cite Washington case law addressing an agent's duty of loyalty to deal with his principal's property solely for his principal's benefit. See Moon v. Phipps, 67 Wn.2d 948, 954-55 (1966). Plaintiffs assert that WFE was secretly

acquiring an interest in Plaintiffs' property by not disclosing the earnings credits that offset the bank charges.

WFE had no duty to disclose WFE's receipt of earnings credits to Plaintiffs, and WFE was not acquiring any interest in Plaintiffs' property by receiving earnings credits from Wells Fargo Bank. Plaintiffs have no claim whatsoever to the earnings credits. See Wash. Legal Found. v. Legal Found. Wash., 271 F.3d 835, 860 (9th Cir. 2001) (en banc) (holding that "the earnings credits did not belong to the customers in the first place, but rather were incentives provided to the escrow companies to use as they pleased for any covered banking charges."). For these reasons, Plaintiffs' breach of fiduciary duty claim and Plaintiffs' breach of duties as an agent claim, as alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶¶ 76-83, fail as a matter of law.

### 3. Unjust Enrichment (Sixth Count)

To establish a claim for unjust enrichment, Plaintiffs must prove three elements: (1) a benefit conferred by one party to another, (2) the party receiving the benefit must have known about the benefit, and (3) the party receiving the benefit received it under circumstances that make it inequitable to allow that party to retain it. Dragt v. Dragt/DeTray, LLC, 139 Wn. App. 560, 576 (2007). Plaintiffs cannot establish that WFE was enriched at Plaintiffs' expense.[11] See Molander v. Raugust Mathwig, 44 Wn. App. 53, 61 (1986). The Ninth Circuit has upheld the practice of escrow companies receiving earnings credits. See Wash. Legal Found. v. Legal Found. of Wash., 236 F.3d 1097, 1103 (9th Cir. 2001). There is nothing inequitable about allowing WFE to use earnings credits to offset bank charges. For these reasons, Plaintiffs' unjust enrichment claim, as alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶¶ 84-88, fails as a matter of law.

---

[11] The Court does not consider WFE's alternative argument, set forth for the first time in its reply, that an unjust enrichment claim is actionable only when the claim is not covered by a contract.

ORDER -18-

#### 4. **Breach of Contract (Seventh Count)**

Plaintiffs allege that WFE breached the escrow instructions, taken together with the HUD-1 Settlement Statement. FAC ¶¶ 89-94. As noted above, the escrow instructions provide that WFE will be reimbursed for "expenses incurred by it." Plachy Decl., Ex. A at WFE 00172. Plaintiffs argue that the basis for their breach of contract claim is the fact that WFE incurred no expenses as a result of WFE's ability to use earnings credits to offset bank charges. As with Plaintiffs' Washington CPA claim, the legality of WFE's practice of charging wire transfer fees at the time of closing does not depend on the ultimate form of payment at month's end between Wells Fargo Bank and WFE. Plaintiffs' breach of contract claim, as alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶¶ 89-94, fails as a matter of law.

### E. **One-Year Statute of Limitations**

Private RESPA actions are barred by a one-year statute of limitations. 12 U.S.C. § 2614. On October 1, 2008, the Court held that RESPA's one-year statute of limitations could be equitably tolled based on the allegations of affirmative misrepresentations in the original complaint. Order Denying Defendant's Mot. Dismiss, docket no. 14, at 3-4 (finding sufficient allegations to survive motion to dismiss). WFE now moves for summary judgment dismissal of Plaintiffs' RESPA claims on statute of limitations grounds, as an alternative to its motion on the merits, asserting that "Plaintiffs have failed to proffer a scintilla of evidence supporting their allegations of concealment of the fees." Def.'s Mot. Summ. J. at 24:15-16. Plaintiffs' complaint is not based on the concealment of the wire transfer fees, but rather the concealment of earnings credits. The Court declines to reverse its prior ruling on equitable tolling and does not bar Plaintiffs' RESPA claims based on statute of limitations grounds.

### F. **Class Claims**

Plaintiffs' putative class claims arising from the alleged "wire overcharge scheme" are dismissed in conjunction with the dismissal of Plaintiffs' claims. See East Texas Motor

Freight Sys. v. Rodriguez, 431 U.S. 395, 403-06 (1977) (named plaintiffs' inability to prove merits of their individual claims defeated their class claims). Plaintiffs have not argued that the class claims should remain even if their individual claims are dismissed.

## III. CONCLUSION

The Court GRANTS Defendant Wells Fargo Escrow Company, LLC's Motion for Summary Judgment, docket no. 25. Accordingly, the Court DISMISSES with prejudice the RESPA Section 8(a) and Section 8(b) claims alleged on behalf of Plaintiffs and the Wire Fee Class, FAC ¶¶ 56-62 (First Count), the Breach of Duties as an Agent claim, FAC ¶¶ 80-83 (Fifth Count), the Unjust Enrichment claim, FAC ¶¶ 84-88 (Sixth Count), and the Breach of Contract claim, FAC ¶¶ 89-94 (Seventh Count), in their entirety. The Court DISMISSES with prejudice the Washington CPA claim, FAC ¶¶ 68-75 (Third Count) and the Breach of Fiduciary Duty claim, FAC ¶¶ 76-79 (Fourth Count) only to the extent they were alleged on behalf of Plaintiffs and the Wire Fee Class.

Remaining for the Court's future disposition are Plaintiffs' claims alleged on behalf of Plaintiffs and the Builder Referral Class, i.e., RESPA, FAC ¶¶ 63-67 (Second Count); Washington CPA, FAC ¶¶ 68-75 (Third Count), and Breach of Fiduciary Duty, FAC ¶¶ 76-79 (Fourth Count).

IT IS SO ORDERED.

DATED this 20th day of May, 2009.

Thomas S. Zilly
United States District Judge