1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN J. CONTOS and REBECCA W.
CONTOS, a marital community, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO ESCROW COMPANY,
LLC, an Iowa limited liability company,

Defendant.

No. C08-838Z

ORDER

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Steven and Rebecca Contos' ("Plaintiffs") motion for class certification, docket no. 60.  The Court has reviewed the pleadings, supporting declarations and the argument of counsel, and now enters the following order.

## II.   BACKGROUND

### A.   **Plaintiffs' Condominium Purchase**

On January 10, 2006, Plaintiffs executed a Condominium Purchase and Sale Agreement (the "PSA") for the purchase of a newly constructed condominium.  Plachy Decl., docket no. 65, Ex 2.  The condominium was constructed and sold by 1026 NE 65th, LLC (the

ORDER  -1-

1   "Builder"), and was part of a larger development of condominiums (76 in all) known as

2   "Dwell Roosevelt."  Brown Decl., docket no. 61, Ex. 11 at 7; Kurfirst Decl., docket no. 67,

3   ¶ 5.  The PSA used by the parties was a form agreement prepared by the Northwest Multiple

4   Listing Service ("NWMLS").  Plachy Decl., docket no. 65, Ex. 2.  The Builder also prepared

5   an addendum (the "Addendum") to the PSA, id., which it used in connection with the sale of

6   all of the units at Dwell Roosevelt.  Kurfirst Decl., docket no. 67, ¶ 2.

7        The PSA contained the following provision regarding escrow fees: "Seller and Buyer

8   shall each pay one-half of the escrow fee. . . ."  Kurfirst Decl., docket no. 65, Ex. 2 at 3.

9   However, the Addendum provided that "Buyer shall pay one-half of the normal schedule

10  escrow fee.  Seller may be entitled to a builder's discount on its portion of the escrow fee."

11  Id. at 12.[1]

12       Defendant Wells Fargo Escrow Company, LLC ("WF"), and its affiliate Wells Fargo

13  Home Mortgage, perform services as a lender and escrow agent to builders on large

14  development projects.  Id. Ex. 16.  WF provided discount escrow rates to the Builder, in the

15  form of a flat fee of $150.00 plus tax, for any closing performed by WF in the Dwell

16  Roosevelt development.  Brown Decl., docket no. 61, Ex. 3 at 67.  Although buyers had the

17  right to negotiate for the use of a different escrow company, the default designation in the

18  PSA (inserted by the Builder) was WF.  Meenaghan Decl., docket no. 66, Ex. 1 at 26.

19       The sale of the condominium to Plaintiffs closed on September 6, 2006.  Plachy Decl.,

20  docket no. 65, Ex. 4.  At closing, Plaintiffs entered into two mortgage loan transactions.  The

21  first mortgage, a loan of $186,000, provided financing for eighty percent (80%) of the

22  condominium's purchase price and identified Steve Contos as the sole borrower.  Plachy

23  Decl., docket no. 65 at ¶ 9.  On the second mortgage loan, both Steven and Rebecca Contos

24  borrowed another $23,250 for an additional ten percent (10%) of the purchase price.  Id.  WF

25  ─────────────

26  [1]The parties agreed in the Addendum that "[t]he provisions of this Addendum shall control over any
conflicting provisions of the [PSA] or any other written agreement."  Plachy Decl., docket no. 65,
Ex. 2 at 15.

acted as the escrow agent for these loan transactions.  Id. Ex. 2.  Although the Builder paid the discounted $150.00 rate (plus taxes), WF charged Plaintiffs escrow fees of $652.80 on the first loan and $136.00 on the second loan.[2]  Brown Decl., docket no. 61, Ex. 6.

The rate paid by a buyer was subject to negotiation, and two buyers who purchased units at the Dwell Roosevelt development negotiated for, and received, the same discounted rate as the Builder.  Kurfirst Decl., docket no. 67, ¶ 5.

In addition to the disclosures set forth in the PSA and Addendum, the Closing Agreement and Escrow Instructions contained the following disclosure related to escrow fees:

> **Closing Agent's Fees and Expenses.**  The closing agent's fee is intended as compensation for the services set forth in these instructions.  If additional services are required to comply with any change or addition to the parties' agreement or these instructions, or as a result of any party's assignment of interest or delay in performance, the parties agree to pay a reasonable additional fee for such services.  The parties shall also reimburse the closing agent for any out-of-pocket costs and expenses incurred by it under these instructions.  The closing agent's fees, costs and expenses shall be due and payable on the closing date or other termination of the closing agent's duties and responsibilities under these instructions, and shall be paid one-half by the buyer and one-half by the seller unless otherwise provided in the parties' agreement.

Plachy Decl., docket no. 65, Ex. 1.

**B.    Class Action Claims**

Plaintiffs have proposed the following class definition:

> All persons who purchased real property located in the state of Washington from May 29, 2004 to the date of judgment, who received escrow services from, and paid escrow or closing fees to Wells Fargo Escrow, wherein the buyer's share of the escrow fee was less than the fees Wells Fargo Escrow charged to the seller of the real property due to Wells Fargo Escrow providing the seller a discounted rate in multiple transactions.[3]

---

[2]WF also charged Plaintiffs a wire fee of $30.00 on the first loan, a wire fee of $29.93 on the second loan, and a courier fee of $45.00.  Brown Decl., docket no. 61, Ex. 6.

[3]Although the proposed class definition includes both escrow and closing fees, the principal focus of Plaintiffs' claims arises out of the escrow fees paid on Plaintiffs' two loans.

ORDER   -3-

Plaintiffs have identified approximately 3,500 transactions that fit their proposed class definition.  Brown Decl., docket no. 61, Ex. 1.  During the proposed class period, WF provided escrow closing services for 26 multi-unit projects where the seller in the transaction paid less in escrow costs than the buyer.  Plachy Decl., docket no. 65, ¶ 39.  As with the Dwell Roosevelt project, most of the other projects used the NWMLS PSA which provides that escrow fees would be paid equally by the buyer and the seller.[4]  Id. at ¶ 40.  However, each developer had their own custom addendum associated with their project containing varying disclosures about the payment of escrow fees.  For example:

. . . Seller, as a repeat customer, receives discounted rates for title insurance and escrow fees that consumers do not receive. . . .  Id. Ex. 17.

. . . Seller is responsible for . . . one half of the escrow fees normally charged by the escrow company less any discount negotiated by the seller. . . .  Id. Ex. 18.

. . . Seller may be entitled to a builder's discount on its portion of the escrow fee. . . .  Id. Ex. 19.

Seller shall pay the following closing costs: . . . the builder discounted fee. . . Id. Ex. 21.

. . . Buyer acknowledges that Seller may receive a discounted rate on its share of the fees of the Closing Agent. . . .  Id. Ex. 24.

. . . Buyer acknowledges that Seller may receive a discounted "builder" rate on its share of the fees of the Closing Agent. . . .  Id. Ex. 25.

Buyer shall pay one-half of the normal scheduled escrow fee.  Seller shall be entitled to any builder's discount on the escrow fee.  Id. Ex. 27.

One half of the customary escrow fees and tax shall be paid by Purchaser, and the balance of the escrow fees and tax calculated on the Builder's Rate shall be paid by Seller.  Id. Ex. 28.

See also id. Exs. 20, 22, 23, 26, and 29.  Some of the builders' addenda explicitly disclosed the amount of the escrow fees that would be paid by the builder.  See e.g., id. Exs. 20, 22, 23, and 26.  ("Seller's portion of the escrow fee shall not exceed One Hundred

_____

[4]At least two builders used custom PSAs that expressly disclosed the escrow fee discount received by the builder.  Plachy Decl., docket no. 65, ¶¶ 30, 31.

ORDER   -4-

1   ($100.00) Dollars."); see also id. Ex. 29 ("Seller's portion of the escrow fee shall not exceed

2   One Hundred Eight Dollars ($108.00).").  The Addendum received by Plaintiffs provided

3   only that the seller may receive a discounted rate.  Id. Ex. 2 at 12.

### III.    DISCUSSION

### A.    Standard of Review

6   Class certification may be achieved "only if (1) the class is so numerous that joinder

7   of all members is impracticable, (2) there are questions of law or fact common to the class,

8   (3) the claims or defenses of the representative parties are typical of the claims or defenses of

9   the class, and (4) the representative parties will fairly and adequately protect the interests of

10  the class." Fed. R. Civ. P. 23(a).  Once these prerequisites are established, it must then also

11  be demonstrated that a class action is maintainable under one of the provisions of Rule 23(b).

12  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

13  The plaintiff bears the burden of establishing the propriety of class certification under

14  Rule 23(a) and (b).[5]  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  In making

15  a determination of class certification, the court is obliged to take the allegations contained in

16  the plaintiffs' complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

17  Although the court should not make a preliminary determination of the merits of the

18  plaintiffs' claims, Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974), the court is required

19  _____

20  [5] Plaintiffs contend that WF has waived any objections to the motion to certify.  Reply, docket no.
    74 at 2 n.1.  Plaintiffs propounded requests for admission on WF seeking WF's admission that the
21  complaint satisfied the requirements of Fed. R. Civ. P. 23.  Brown Supp. Decl., docket no. 75, Ex.
    15, Request for Admission nos. 1-5.  WF objected to the requests as improper, and entered denials.
22  Id.  The requests for admission were accompanied by additional discovery requests seeking the
    production of all facts and documents supporting WF's denial that class certification was
23  appropriate.  Id.  WF again objected to the discovery, and refused to produce any information.  Id.
    Plaintiffs argue that WF's failure to respond to the discovery precludes it from opposing the motion
24  to certify.  The Court rejects this objection because the requests for admission improperly seek
    admissions of procedural matters, rather than substantive legal or factual questions.  See Fed. R.
25  Civ. P. 36 advisory committee's note (amendments to Fed. R. Civ. P. 36 limited requests to matters
    within the scope of Fed. R. Civ. P. 26(b) which only provides for discovery regarding nonprivileged
26  matters that are relevant to a party's claim or defense).

ORDER  -5-

1  to engage in a "rigorous analysis" that "probes behind the pleadings" in order to determine

2  whether certification is appropriate.  Chamberlan v. Ford Motor Co., 402 F.3d 952, 962 (9th

3  Cir. 2005).

4      **B.    Fed. R. Civ. P. 23(a)**

5      Under Fed. R. Civ. P. 23(a), Plaintiffs must satisfy the elements of numerosity,

6  commonality, typicality, and adequacy of representation.

7          **1.    Numerosity**

8       A proposed class meets the numerosity requirement of Rule 23(a) if "the class is so

9  large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  WF does not

10 contest the numerosity element.  Although it is unclear how many potential class members

11 exist, Plaintiffs allege that the class is on the order of 3,500 plaintiffs, which clearly meets

12 the standard.  See Leyva v. Buley, 125 F.R.D. 512 (E.D. Wash. 1989) (certifying class of 50

13 members).

14          **2.    Commonality**

15      The second element of Rule 23(a) requires that there are questions of law or fact that

16 are common to the class.  This element is less rigorous than the predominance requirement of

17 Rule 23(b)(3).  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "The

18 existence of shared legal issues with divergent factual predicates is sufficient, as is a common

19 core of salient facts coupled with disparate legal remedies within the class."  Id. at 1019.

20 Although members of the proposed class may possess different avenues of redress,

21 commonality is established when their claims stem from the same source.  Id. at 1020.

22      There are several common legal and factual questions raised by Plaintiffs including:

23 1) whether the discounts offered by WF to developers are illegal kickback agreements under

24 12 U.S.C. § 2607(a) ("section 8(a)") of the Real Estate Settlement Procedures Act

25 ("RESPA"); 2) whether WF violated Washington's Consumer Protection Act (the "CPA") by

26 making a material misrepresentation of fact; and 3) whether WF breached a fiduciary duty to

1   buyers.  WF argues that these are ultimate legal questions which, alone, cannot satisfy the

2   commonality requirement of Rule 23(a) because determination of these issues will not

3   resolve individual class members' claims without a subsequent investigation of the

4   individualized facts of each class member's case.  See Def.'s Resp., docket no. 70 at 20,

5   citing Liberty Lincoln Mercury v. Ford Mktg. Corp., 149 F.R.D. 65 (D.N.J. 1993).  The

6   standard in the Ninth Circuit is less strenuous, requiring only that the claims stem from the

7   same source.  Hanlon v. Chrysler Corp., 150 F.3d at 1020.

8         Although there may be divergent factual predicates, the class plaintiffs' claims all

9   stem from WF's alleged misconduct.  Under the Ninth Circuit's more permissive standards,

10   the potential need for individual factual determinations is not dispositive under Rule 23(a),[6]

11   and the Court concludes that the proposed class meets the commonality requirement.

12                        **3.   Typicality**

13         The third element of Rule 23(a), typicality, is satisfied when the representative's

14   claims are "reasonably coextensive with those of absent class members; they need not be

15   substantially identical."  Hanlon, 150 F.3d at 1020.  Individual defenses applicable to the

16   proposed class representative do not preclude a finding of typicality unless there is a danger

17   that absent class members will suffer if their representative is preoccupied with defenses

18   unique to it.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

19         WF argues that Plaintiffs' claims cannot be "typical" because: 1) their RESPA claim

20   is subject to a statute of limitations defense; and 2) the disclosure they received is different

21   from disclosures received ed by other plaintiffs.  However, the test for typicality relates only

22   to the "nature of the claim or defense of the class representative, and not to the specific facts

23   from which it arose or the relief is sought."  Jones v. Shalala, 64 F.3d 510, 514 (9th Cir.

24

25

26         [6]The disparate factual issues remain relevant for purposes of determining whether common
questions of law or fact predominate over individual issues.  See Fed. R. Civ. P. 23(b)(3).

ORDER   -7-

1    1995).  The nature of Plaintiffs' claims are the same as the individual class members.  The

2    proposed class meets the liberal standard for typicality set forth in Rule 23(a).

3                        **4.    Adequacy**

4         The final element of Rule 23(a) requires that "the representative parties will fairly and

5    adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This element

6    considers whether the named plaintiff or counsel have any conflicts of interest with other

7    class members and whether the named plaintiff and counsel will vigorously prosecute the

8    case. Hanlon, 150 F.3d at 1020.  "The purpose of the adequacy of representation requirement

9    is to ensure that the rights of absent class members are represented vigorously by qualified

10   counsel and by the class representatives."  Smith v. Univ. of Wash. Law Sch., 2 F.Supp.2d

11   1324, 1343 (W.D.Wash. 1998).  WF argues that Plaintiffs cannot adequately represent the

12   class because their claims are subject to potential statute of limitations defenses, creating a

13   conflict with their representation of the class.  But WF cites no authority for the proposition

14   that an affirmative defense, which may affect some members of the class, creates a conflict

15   that otherwise defeats the adequacy of a proposed class representative.

16        WF does not challenge the adequacy of Plaintiffs' counsel.  There is no evidence that

17   the named Plaintiffs or their counsel would pursue this case with anything less than vigor on

18   behalf of the proposed class.  The proposed class representatives and their counsel meet the

19   adequacy requirement.

20        **C.    Fed. R. Civ. P. 23(b)**

21        In addition to the elements of Rule 23(a), a plaintiff seeking class certification must

22   meet one of the standards set forth in Rule 23(b).  Plaintiffs only seek class certification

23   under the opt-out provisions of Rule 23(b)(3), which requires the Court to "find[ ] that the

24   questions of law or fact common to the members of the class predominate over any questions

25   affecting only individual members, and that a class action is superior to other available

26   methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**1.** **RESPA Claim**

Plaintiffs' first proposed claim arises under RESPA section 8(a), which provides as follows:

> No person shall give and no person shall accept any . . . thing of value pursuant to any agreement or understanding . . . that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  Specifically, Plaintiffs argue that WF entered into an agreement or understanding with builders pursuant to which WF provided discounted escrow services in exchange for referrals, in violation of section 8(a).  WF argues that its defenses to Plaintiffs' RESPA section 8(a) claim, based on RESPA's section 8(c) safe harbor and statute of limitations, require individualized factual inquiries that preclude class certification under Rule 23(b)(3).

a) RESPA – Section 8(c) Safe Harbor

RESPA section 8(a) does not prohibit "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed."  12 U.S.C. § 2607(c) ("section 8(c) safe harbor").  In determining whether the section 8(c) safe harbor applies, courts apply the two-part "HUD" test.  Lane v. Residential Funding Corp., 323 F.3d 739, 743 (9th Cir. 2003) (citing Housing and Urban Development Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53054 (Oct. 18, 2001) ("HUD Policy Statement")).

> Under [the HUD] test, a discount on settlement services given to a seller of real estate is not prohibited under section 8(a) when: 1) goods and facilities are actually furnished or services are actually performed for the compensation paid, and 2) the discount is reasonably related to the value of the goods or facilities actually furnished or the services actually performed.

Id. at 742-43.  The Ninth Circuit has applied the HUD test to permit "discounts that are based on economies of scale or other recognized economic principles" where the discount is reasonably related to the value of the goods or services actually provided.  Lane, 323 F.3d at 743-45.

ORDER   -9-

1    In this case, the parties do not dispute that the first part of the HUD test is met.  WF

2    clearly provided services to Plaintiffs.  The parties dispute whether the discount received by

3    WF was reasonably related to the services provided.[7]

4    The overwhelming majority of courts applying the HUD test have concluded that it

5    requires a fact-based inquiry into the individual circumstances of each loan transaction.

6    Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201, 1208 (9th Cir. 2003) (vacating sua

7    sponte the district court's class certification and holding that "RESPA requires a loan-

8    specific analysis . . .") Isara v. Cmty. Lending, Inc., 2000 WL 33680237, *5 (D.Hi. 2000)

9    (string citation to court cases holding that the HUD test requires an individualized fact-based

10   inquiry); see also Glover v. Standard Fed. Bank, 283 F.3d 953 (8th Cir. 2002) (holding that a

11   case-by-case analysis of the reasonableness of the fee charged is required to determine

12   whether the fee is an illegal kickback for a referral so class action not practicable).[8]

13   Here, WF claims that the discounts it provided to builders were reasonable given the

14   economies of scale associated with closing a large number of condominium sales.  In order to

15   determine whether WF violated RESPA section 8(a), the Court would need to perform a fact

16   specific analysis to determine whether each discount offered by WF to the 26 different

_____

18   [7] Although a referral agreement may violate RESPA regardless of disclosure, (see HUD Policy Statement, 66 Fed. Reg. at 53057 (". . .disclosure alone does not make illegal fees legal under

19   RESPA.")), that issue is not presented in this case.  Rather, the question to be addressed in this litigation is whether the discount in escrow fees provided to the sellers were reasonably related to

20   the services performed by WF.

21   [8] Prior to oral argument, Plaintiffs filed supplemental authority directed to the propriety of class

22   certification for RESPA section 8(a) claims.  Notice of Supp. Auth., docket no. 79, citing Edwards v. First Am. Corp., 2010 U.S. App. LEXIS 12610 (9th Cir. June 21, 2010) ("Edwards I"), and

23   Edwards v. First Am. Corp., 2010 U.S. App. LEXIS 12718 (9th Cir. June 21, 2010) ("Edwards II"). Edwards I addressed a proposed class representative's standing, which is not contested in this case.

24   2010 U.S. App. LEXIS 12610, *4-9.  In Edwards II, the Ninth Circuit reversed the district court's denial of class certification on a RESPA claim involving a single referral arrangement.  2010 U.S.

25   App. LEXIS 12718, *3-4.  The court concluded that no individualized factual inquiry was necessary because there was only one purported referral agreement which was common to the

26   entire class.  Id. at *4.  Unlike the single agreement in Edwards II, Plaintiffs' proposed class includes 26 different agreements, and an individualized factual inquiry is necessary for each agreement to determine whether the HUD test precludes liability under section 8(a).

ORDER   -10-

developers was based on economies of scale, and whether the discounts on escrow fees offered by WF in each case were reasonably related to the actual services performed for each buyer.[9]

b)      RESPA–Statute of Limitations and Equitable Tolling

The applicable statute of limitations may be considered by a court in determining whether individual considerations predominate for purposes of Fed. R. Civ. P. 23(b).  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 297 n.6 (1st Cir. 2000); O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 414 (C.D. Cal. 2000).  However, there is no per se rule preventing class certification based on a statute of limitations defense.  Waste Mgmt. Holdings, Inc., 208 F.3d at 296.  RESPA has a one-year statute of limitations that begins to run on the date when the loan closed.  12 U.S.C.§ 2614; Bloom v. Martin, 865 F. Supp. 1377, 1386-87 (N.D. Cal. 1994), aff'd, 77 F.3d 318 (9th Cir. 1996).

Plaintiffs argue that the Court need not consider statute of limitations as a potential bar to certification because equitable tolling may be determined on a class wide basis, citing Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 580 (M.D. Fla. 2006).  However, in Veal, the defendant fraudulently concealed information necessary to establish the plaintiffs' claims from the entire proposed class.  Id.  Conversely, here there is no dispute that a large portion of Plaintiffs' proposed class had actual knowledge of the builder discount prior to closing.  See e.g., Plachy Decl., docket no. 65, Exs. 20, 22, 23, 26, and 29.[10]  And in light of the different sellers, brokers and lenders involved in the different transactions, there are factual questions as to when each Plaintiff actually discovered (or did not discover) that the

---

[9] Plaintiffs argue that the discount provided by WF is so low that it cannot, as a matter of law, be reasonable.  Reply, docket no. 74 at 6.  Beyond this bare allegation, there is nothing in the record supporting this assertion.

[10]At oral argument, Defendant estimated that the RESPA claims of as many as 2,421 out of the potential class of 3,500 buyers might be precluded if a one-year statute of limitations was applied without equitable tolling.

ORDER   -11-

1    seller paid a discounted escrow fee.  Unlike <u>Veal</u>, there is no similar blanket concealment by

2    WF upon which the Court could base a class-wide ruling on equitable tolling.

3        Plaintiffs' proposed class applies to transactions that have taken place from May 29,

4    2004 through the present.  For those parties who have claims that fall outside the one-year

5    statute of limitations (transactions that closed between May 29, 2004 and May 29, 2007,

6    including Plaintiffs, <u>see</u> Brown Decl., docket no. 61, Ex. 7), the Court would need to

7    undertake individualized factual inquiries to determine whether their RESPA claims are

8    barred by the statute of limitations, or whether they have been preserved by equitable tolling

9    principles.

10              c)        <u>Certification of the RESPA Claim is Not Appropriate</u>

11        In order to adjudicate the Plaintiffs' RESPA section 8(a) claim, the Court would need

12    to undertake individualized factual inquiries to determine whether the different discounts

13    offered by WF were reasonably related to the services it provided to the different builders

14    and potential class plaintiffs.  The Court would also need to perform an individual review of

15    a majority of the transactions to determine whether the statute of limitations is equitably

16    tolled.  In light of these twin concerns, individual questions will predominate over common

17    issues and class certification of the RESPA claim is not appropriate.[11]

18          **2.    CPA Claim**

19        To prevail on their CPA claim, Plaintiffs bear the burden of proving (1) an unfair or

20    deceptive act or practice by WF; (2) occurring in trade or commerce; (3) that affects the

21    public interest; (4) which causes; (5) injury to the Plaintiffs' business or property.  <u>Hangman</u>

22

23    [11]Class certification of the RESPA claim is also not superior to alternative litigation.  <u>See</u> Fed. R.
      Civ. P. 23(b)(3) (to obtain class certification, the proposed class must be superior to other available
24    methods for fairly and efficiently adjudicating the controversy).  Although Plaintiffs claim that the
      alternative to certification is no case at all (due to the small size of the average consumer's claim),
25    that argument has been rejected by previous courts.  <u>See, e.g.</u>, <u>Glover v. Standard Fed. Bank</u>, 283
      F.3d 953 (8th Cir. 2002) (rejecting certification under section 8(a) and stating that alternative
26    superior means for justice existed in light of Congress' inclusion of an attorneys' fee provision in
      RESPA to encourage "individual consumers to raise valid RESPA claims.").  The CPA also has an
      attorneys' fee provision that is similar to RESPA.  <u>See</u> RCW 19.86.090.

1   Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986).  Plaintiffs

2   allege that there are two bases by which they can establish the unfair or deceptive act element

3   of their CPA claim.[12]  Reply, docket no. 74 at 7.  First, Plaintiffs contend the PSA contained

4   a material misrepresentation that "seller and buyer shall pay one-half of the escrow fee

5   stated."  Brown Decl., docket no. 61, Ex. 7 at 3.  The second act that forms the basis for

6   Plaintiffs' CPA claim is that "whether or not the fees were disclosed" defendant "exploited

7   the complexity of the transaction" and any disclosure was thus "unfair."  Reply at 7.  Thus,

8   Plaintiffs rely on alleged actual or misleading representations to support their CPA claim,

9   which will necessarily require individualized proof of knowledge and reliance.

10       The recent decision of the Washington Supreme Court in Schnall v. AT&T Wireless

11   Servs., Inc., 168 Wn.2d 125 (2010), is instructive.  In Schnall, the court addressed whether

12   class certification was proper for CPA claims under Washington law.  Id. at 129-30.  The

13   plaintiff alleged that the defendant had billed customers for a charge that was not included in

14   its advertised monthly rates.  Id. at 130.  The trial court refused to certify the class because

15   the causation element of a CPA claim would require an individual analysis into whether each

16   plaintiff actually relied on the defendant's representations.  Id. at 146-47.  The plaintiff

17   appealed, arguing that proof of individual reliance was not required to prove causation.  Id.

18   at 130.  The Washington Supreme Court held that "[d]epending on the deceptive practice at

19   issue and the relationship between the parties, the plaintiff may need to prove reliance to

20   establish causation. . . ."  Id. at 144 quoting Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d

21   27, 38 (2009).  "In misrepresentation and deception or fraud cases, the claimant may be

22   called upon to offer more individualized proof that she had no knowledge of the truth

23   because the remaining evidence is simply insufficient to establish 'but for' causation."

24   Schnall, 168 Wn.2d at 146.  Conversely, in cases where the allegedly unfair or deceptive act

25

26   [12]At oral argument, Plaintiffs alleged a third basis, claiming for the first time that proof of a RESPA
violation satisfies the unfair and deceptive act element of a CPA claim, even if the RESPA claim is
otherwise time-barred.  This new argument does not alter the Court's analysis where Plaintiffs'
RESPA claim is not appropriate for class certification.

1    involved the withholding of material information, the claims may be subject to more

2    generalized proof.  Id. at 147.  The court remanded the case to the trial court for further

3    proceedings to determine whether the plaintiffs' claim was one for affirmative

4    misrepresentation (which would make class certification inappropriate), or material omission

5    (which may be appropriate for certification).  Id.

6        Plaintiffs' CPA claim is based on alleged affirmative misrepresentations.  Mot. to

7    Certify, docket no. 60 at 11 (alleging that WF made "representations that it is acting as a

8    neutral third party and that its fees would be evenly split between the parties. . . ."); Reply,

9    docket no. 74 at 7[13] citing Brown Decl., docket no. 61, Ex. 7 (language from PSA stating that

10   "[s]eller and buyer shall each pay one-half of the escrow fee stated.").[14]  WF has presented

11   evidence that at least some of the proposed class members had actual or constructive notice

12   of the builder discount.  Plachy Decl., docket no. 65, Exs. 20, 22, 23, 26, and 29.

13       In light of the significantly different disclosures given to the different plaintiffs,

14   reliance will be a crucial issue in determining whether the alleged misrepresentations were

15   the but-for cause of each plaintiff's damages.  As such, individual questions about each

16   plaintiff's reliance would predominate and class certification of the CPA claim is not

17   appropriate.

18                    **3.    Breach of Fiduciary Duty Claim**

19       Plaintiffs' final claim against WF is for breach of fiduciary duty as an escrow agent.

20   Specifically, Plaintiffs allege that WF's practice of charging different rates to builders and

21

22

23

24   [13]Although relied on by Plaintiffs, representations in the PSA are not representations of WF.  There
     is no dispute that the PSA is a form document prepared by NWMLS, not WF.

25   [14] At oral argument, although Plaintiffs conceded that their claim is based primarily on WF's
     alleged misrepresentation that it was acting as a neutral third party, Plaintiffs also argued that WF is
26   liable for material omission in failing to disclose that it offered discounted rates to builders.
     However, the substance of Plaintiffs' claim is their allegation that WF affirmatively misrepresented
     its status as a neutral third party and that the fees would be evenly split.

consumers violates its fiduciary duty to remain an unbiased and neutral third party.[15]
Plaintiffs' broad claim of a fiduciary duty under Washington law beyond the escrow
instructions is misplaced.  In Cornelius v. Fidelity Title Co., C08-754MJP (W.D.Wash.
2008), the court rejected a similar argument.  Washington law limits an escrow agent's duties
to the duties set forth in the escrow instructions.  See Notice of Supp. Authority, docket no.
76,   Ex. A.[16]

        The Court reaches the same conclusion on Plaintiffs' breach of fiduciary duty claim as
on the CPA claim.  The claim for breach of fiduciary duty is based upon the same alleged
misrepresentations; that WF would act as a neutral third party, and that the parties would
equally split its fees.  Consequently, the Court would need to undertake an individualized
inquiry to determine whether and to what extent disclosures were actually made and relied
upon.  Individual issues would predominate on the breach of fiduciary duty claim, and class
certification is not appropriate.

## IV.   CONCLUSION

        The Court DENIES Plaintiffs' motion for class certification.  Pursuant to Fed. R. Civ.
P. 23(b)(3), individual issues predominate over common claims, and class certification is not
appropriate.

---

[15] Plaintiffs also argued for the first time in their reply brief that WF is liable for breach of fiduciary duty for failing to meet the standards required of an attorney escrow agent.  Reply, docket no. 74, at 9-11.  Specifically, they claim that attorney Kevin Plachy, a supervisor in WF's escrow department, failed to meet the standard of care of a supervising attorney by not disclosing to buyers the different rates charged to the builders.  This claim is not set forth in Plaintiffs' complaint, and WF had no opportunity to submit briefing on the issue prior to oral argument.  Accordingly, the issue is not properly before the Court on Plaintiffs' present motion for class certification, and has not been considered.

[16] Although the Cornelius decision can be distinguished because the court held a reconveyance was beyond the services of the escrow, Plaintiffs fail to rebut or discuss a similar failure to disclose case.  See Janakanish v. First Am. Title Inc. Co., 2009 U.S. Dist. Lexis 22869 at 6.  (W.D. Wash. 2009).

ORDER   -15-

1    IT IS SO ORDERED.

2    DATED this 1st day of July, 2010.

3

4

5                                                    Thomas S. Zilly

6                                                    Thomas S. Zilly
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   -16-